**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**UNITED STATES OF AMERICA**

v                                                                        **CASE NO: 5:20-cr-11-Oc-28PRL**

**JERON CANTRELL MARTIN**
_____/

**REPORT AND RECOMMENDATION**[1]

On Friday, July 24, 2020, Mr. Martin was sentenced by this Court to a term of 44 months' imprisonment following his guilty plea and conviction for possession of a firearm affecting commerce by a convicted felon. (Docs. 19, 29, 32, 46, 48). The following business day – July 27, 2020 – Martin filed the instant petition seeking his immediate release from custody because of COVID-19 concerns at the Marion County Jail. (Doc. 47). The United States has filed a response in opposition. (Doc. 51).

**I.    Background**

Martin has been continuously incarcerated at the Marion County Jail since his initial state arrest on September 30, 2019. (Doc. 48 at 2). Prior to Martin's sentencing proceeding, the Probation Office prepared a thorough Presentence Investigation Report (PSR). (Doc. 35). This report specifically included paragraphs describing the defendant's physical condition. Id. at ¶¶ 52, 53. After a review of the PSR by the parties, neither the United States nor Martin had any objections to its contents. Id. at 19. In the PSR, Martin described his physical health as good. Id.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

at ¶ 53. He reported no health concerns – he was not under the care of a physician and was not taking any prescription medications. Id. He further denied any surgeries or allergies. Id. And, Martin did not report that he suffered from any health conditions commonly associated as risk factors for COVID-19.

Martin's sentencing originally had been scheduled for June 12, 2020. (Doc. 31). Martin moved to continue the proceedings until late July so he could obtain certain records and prepare his arguments in mitigation. (Docs. 34, 37). He requested this continuance despite the ongoing COVID-19 pandemic and possibility that cases would develop in the jail.  On July 17, 2020, Martin filed a sentencing memorandum with 81 pages of attachments for the Court's consideration. (Doc. 42). In the memorandum, Martin asked this Court to impose a 36 month term of incarceration, which was below the 41 to 51 month recommended guidelines range. (Doc. 35 at ¶ 67; Doc. 42 at 9-10). Martin made no request for immediate release or for home confinement, even though COVID-19 cases already had developed at the jail. Doc. 42. Martin's in-court argument at sentencing echoed this same request for a 36-month term of imprisonment. While counsel noted the presence of COVID-19 cases at the jail, and the possibility that Martin could be at risk of contracting the virus until his eventual designation to a BOP facility, counsel did not address any of the issues raised in the instant petition.

Having heard Martin's arguments in mitigation, his counsel's description of the COVID-19 risks at the Marion County Jail, and Martin's request for a lesser prison sentence, this Court nevertheless ordered him to a term of 44 months' imprisonment – three months above the low end of the recommended sentencing range under the guidelines. Doc. 35 at ¶ 67. He is currently being housed at the Marion County Jail. The United States estimates that Martin's BOP designation and departure from Marion County Jail will occur approximately August 14-21, 2020.

In his petition, Martin alleges that he is at a "significantly higher risk of contraction" and "severe deterioration of health due to COVID-19 virus exposure" in H-Pod – his housing location at the Marion County Jail. Martin also contends that the jail has no way to properly sanitize "hand towels," which makes "drying hands impossible" (Paragraph 4); inmates are forced to sleep within three feet of each other (Paragraph 4); N-95 masks are not being provided to inmates even though they are being housed in groups of more than 50 people (Paragraph 4); inmates in H-Pod have been forced to relinquish cloth masks for blue, single-use masks that have been washed by "contaminated workers" and improperly reused (Paragraph 5); jail staff have intentionally "overlooked" the inmates, resulting in an increase in COVID-19 cases at the facility (Paragraph 6); and, prior to July 10, 2020, the jail had no viable access to testing for COVID-19 (Paragraph 8).

In response, counsel for the United States advised that he spoke with command staff at the Marion County Jail regarding each of Martin's claims. (Doc. 51). He also filed materials that detail the jail's efforts to combat COVID-19, including the precautions being taken to protect both the staff and inmates. (Doc. 51-1). According to counsel, there is no sign of "severe deterioration of heath due to COVID-19 exposure in H-Pod." While some inmates in H-Pod had previously tested positive, there were no positive cases in H-Pod as of July 27, 2020 (the date Martin filed his petition). (Doc. 51 at 5-6). And of the 1,427 total inmates housed at Marion County Jail on July 31, 2020, there were only 26 active positive cases. (Doc. 51 at 8-9; Doc. 51-3).

Likewise, Plaintiff's claims regarding towels, sleeping conditions, and masks were refuted. Contrary to Martin's assertion, inmates are not provided with "hand towels." (Doc. 51 at 6). Rather, they are given a clean bath towel twice per week. Inmates working in the jail's laundry facility are routinely tested for COVID-19 and they are required to wear protective face shields, gloves, and

3

gowns while working. With respect to sleeping, H-Pod is an open dormitory with sets of bunkbeds. (Doc. 51 at 7). Each inmate is assigned an individual bunk to assure the same person uses the same bunk. While the upper and lower bunks are less than six feet apart, the bunkbeds have been spaced out as widely as possible.

With respect to masks, the United States acknowledges that there is a shortage of N-95 masks throughout the jail. However, the jail provides each inmate with a clean mask made of heavy cloth. (Doc. 51 at 7-8). Inmates are informed that they may always wear their mask, but that they must wear their masks during headcounts, when exiting the section, and when they have contact with staff members. (Doc. 51-2). The masks are exchanged on Mondays and Thursdays. (Doc. 51-1 at 8, Doc. 51-2). During morning headcount on those days, the inmates proceed to the location of the pod officer. Each inmate removes his mask, deposits it in a laundry bag, and is issued a new, clean mask. The used masks are then taken to the laundry for cleaning and sanitation. Finally, as for testing, the United States represents that the jail has had access to testing since at least June 2020, when the first cases of COVID-19 were found at the jail through testing of inmates confined in A-Pod.

## II. Discussion

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the limited exceptions, known as "compassionate release," is provided in 18 U.S.C. § 3582(c)(1)(A):

> (c) Modification of an imposed term of imprisonment—The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

4

> of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement on compassionate release is set forth at U.S.S.G. § 1B1.13.[2] A movant for compassionate release bears the burden of proving that a reduction in sentence is warranted. *See United States v. Shuler*, No. 3:11-cr-138-J-32JRK-5, 2020 WL 4349942, at 1 (M.D. Fla. July 29, 2020); *United States v. Stuyvesant*, No. 09-60184-CR-ALTMAN, 2020 WL 1865771, at *5 (S.D. Fla. April 14, 2020).

---

[2] The policy statement provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) Extraordinary and compelling reasons warrant the reduction;
   or
   (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary defines "extraordinary and compelling reasons" to mean a defendant's medical condition, old age, certain family circumstances, or "other reasons" as determined by the Director of BOP, as set forth in § 1B1.13, cmt. 1.

As an initial matter, Martin's motion does not specifically identify the statutory basis for his request for immediate release from jail. However, his filing appears to be more akin to a compassionate release petition than a motion to correct or reduce a sentence under Federal Rule Criminal Procedure 35. Accordingly, the Court will treat it as such.

Martin's motion fails to show "extraordinary and compelling" reasons to warrant compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 & cmt. 1.[3] Courts have found that the mere existence of Covid-19 cannot independently justify compassionate release. *See United States v. Shuler,* No. 3:11-c13J-32JRK-5, 2020 WL 4349942, at *2 (M.D. Fla. July 29, 2020) (citing *United States v. Raia*, 954 F.3d 594,597 (3d Cir. 2020)); *United States v. Eberhart*, No. 13-cr-313- PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar 25, 2020). Martin, who is 38 years old, does not contend that he has any underlying health conditions that commonly are associated as risk factors for COVID-19. (Docs 42, 43-1). Moreover, as discussed above, the United States has refuted Martin's unsupported assertions that the condition at the jail is "seriously deteriorating." Indeed, as of July 31, 2020, there were only 26 active positive cases, none of which were in Martin's housing unit. In addition, measures are being taken in the jail to minimize the spread of the virus (i.e., masks, distancing bunkbeds, testing, quarantine wards).

Moreover, Martin has failed to demonstrate that the 18 U.S.C. § 3553(a) factors considered by the court at the time of sentencing – only two weeks ago – have materially changed (if at all). As reflected in the PSR, the nature and circumstances of his crime involve not only the illegal possession of a loaded firearm by a multi-convicted felon, but also the possession of a digital scale and quantities of crack cocaine, marijuana, methamphetamine and assorted pills. (Doc 35 at ¶ 8-

---

[3] The United States concedes that Martin does not have access to BOP administrative remedies while awaiting designation in the Marion County Jail, and so, for all practical purposes, exhausted his administrative remedies prior to fling his petition for release from custody.

11). Moreover, Martin has an extensive criminal record involving the possession of illegal drugs, with jail terms and state prison sentences. *Id.* at ¶¶ 28-35. Accordingly, the factors under section 3553(a) strongly support Martin's continued incarceration, not his release. They also reflect that he is a danger to the safety of other persons and to the community, making him inappropriate for compassionate release. *See* U.S.S.G. § 1B1.13.

### III.     Conclusion

Accordingly, for the reasons stated above, it is recommended that Martin's Petition for Release (Doc. 47) be DENIED.

DONE and ENTERED in Ocala, Florida, on August 7, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties